**KOLLER LAW LLC**
David M. Koller, Esquire (PA 90119)
Jordan D. Santo, Esquire (PA 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELLY COLLINS,** | : | **Civil Action No.** 26-8147 |
| **PLAINTIFF,** | : | |
| **v.** | : | **COMPLAINT AND** |
| | : | **JURY DEMAND** |
| **CITY OF PHILADELPHIA,** | : | |
| **DEFENDANT.** | : | |

**CIVIL ACTION**

Plaintiff, Kelly Collins (hereinafter "Plaintiff"), by and through her attorney, brings this civil matter against Defendant, City of Philadelphia (hereinafter "Defendant"), alleging she was subject to unlawful violations of the First and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983 ("Section 1983"), and the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq. ("Whistleblower Law"), and avers and alleges as follows:

**THE PARTIES**

1. Plaintiff is an adult individual domiciled in Philadelphia, PA.
2. Upon information and belief, Defendant is a city of the first class and political subdivision of the Commonwealth of Pennsylvania with a principal place of business at 1400 John F. Kennedy Boulevard, Philadelphia, PA 19107.

3. Defendant operates the Philadelphia Fire Department ("PFD"), located at 240 Spring Garden Street, Philadelphia, PA 19123.

4. At all times relevant hereto, Defendant was an "employer" and Plaintiff was an "employee" as those terms are defined under the Whistleblower Law, 43 P.S. § 1422.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the practice of treatment which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendant's managers, supervisors, agents and employees acted under color of state law and within the course and scope of their employment with Defendant.

**JURISDICTION AND VENUE**

7. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

8. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

9. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that

they form part of the same case or controversy.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in the judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
13. In or around 2016, Defendant hired Plaintiff.
14. Plaintiff held the permanent civil service position of Chief Fire Equipment Dispatcher in the PFD.
15. Plaintiff was well qualified for her position and performed well.
16. In or around June 2019, Plaintiff took a leave from her civil service position to serve in the civil service exempt position of Information Technology Director in Defendant's Office of Innovation and Technology.
17. In or around June 2023, Defendant promoted Plaintiff to the position of Senior IT Director.
18. Plaintiff was well qualified for her positions and performed well.
19. Under Defendant's Civil Service Regulations, Plaintiff retained the right to be restored to her civil service title upon leaving her exempt position.
20. In or around July 2024, Anthony Hudgins, Deputy Commissioner, approached Plaintiff about joining the PFD executive team.
21. Jeffery W. Thompson, Fire Commissioner, personally called Plaintiff and asked her to join the PFD as Chief of Staff.

22. At all times relevant hereto, Thompson was the appointing authority for the PFD and had final policymaking authority over the discipline and dismissal of PFD exempt employees.

23. On or about November 11, 2024, Plaintiff began working full time in the exempt position of Chief of Staff and Deputy Commissioner.

24. Plaintiff was well qualified for her position and performed well.

25. In or around October 2025, Defendant issued Plaintiff a pay raise.

26. Plaintiff had no prior discipline throughout her employment with Defendant.

**HUDGINS INFORMED PLAINTIFF OF A PFD PAYROLL IRREGULARITY THAT HE WAS INVESTIGATING**

27. In or around September 2024, Hudgins informed Plaintiff that he was investigating a PFD payroll irregularity.

28. In or around October 2024, Hudgins determined that the matter involved overtime fraud and theft by more than one employee.

**DEFENDANT PLACED HUDGINS ON ADMINISTRATIVE LEAVE FOLLOWING MULTIPLE COMPLAINTS OF SEXUAL HARASSMENT**

29. In or around December 2024, multiple PFD employees, some of whom were tied to the fraud investigation, filed sexual harassment complaints against Hudgins.

30. In or around January 2025, Defendant placed Hudgins on paid administrative leave.

**PLAINTIFF LED THE COOPERATION WITH DEFENDANT'S OFFICE OF INSPECTOR GENERAL ("OIG")**

31. As a result, Plaintiff led the cooperation with Defendant's Office of the Inspector General ("OIG") regarding the investigation.

32. In or around January 2025, Plaintiff turned over all of the documents and evidence Hudgins had compiled to Defendant's Office of the Inspector General ("OIG").

33. From in or around February 2025 through September 2025, Plaintiff continued to cooperate with the OIG investigation, including by providing requested documents and information.

34. Plaintiff also worked to change the PFD's internal controls to prevent such fraud from occurring again.

**PLAINTIFF REPORTED OIG'S INITIAL FINDINGS SUBSTANTIATING THE FRAUD TO THOMPSON**

35. The OIG's initial findings substantiated the fraud.

36. On or about September 11, 2025, Plaintiff sent Thompson a memorandum reporting that Jacqulyn Murphy, Fire Service Paramedic, received approximately $184,000 in unearned overtime compensation over a two-year period.

37. Plaintiff's memorandum also reported that Murphy failed to record more than 100 absences and that Marian Farris, Payroll Supervisor, improperly exempted Murphy from federal income tax withholding while Murphy made recurring $500 payments to Farris.

38. Plaintiff recommended Murphy's dismissal and worked to carry it out.

**THOMPSON BEGAN TO COMMENT TO PLAINTIFF THAT HE HIRED HER AND EXPECTED HER LOYALTY**

39. Beginning in or around August 2025, Thompson made comments to Plaintiff reminding her that he had hired her and that he expected loyalty from her.

**DEFENDANT SUBSTANTIATED THE COMPLAINTS AGAINST HUDGINS AND DEMOTED HIM AS A RESULT**

40. In or around October 2025, Defendant sustained the harassment complaints against Hudgins and demoted him.

41. Hudgins's demotion caused tension between Thompson and Hudgins.

**THOMPSON INTENSIFIED HIS TREATMENT OF PLAINTIFF**

42. In or around November and December 2025, Thompson intensified his treatment of Plaintiff, making multiple comments about her hiring, her friendship with Hudgins, and her loyalty to him.

**THE OIG DOCUMENTS WERE REMOVED FROM PLAINTIFF'S OFFICE WITHOUT HER KNOWLEDGE OR CONSENT**

43. The OIG provided its initial findings to Thompson and Plaintiff in hard copy, which Plaintiff kept in her office.

44. In or around December 2025, while Plaintiff was on vacation, the OIG documents were removed from her office without her knowledge or consent.

45. Upon information and belief, the documents were given to Hudgins, who turned them over to his attorney.

46. Plaintiff did not give the documents to Hudgins or to anyone else.

47. Upon information and belief, Hudgins's former assistant falsely told Thompson that Plaintiff had given her the documents.

**THOMPSON PLACED PLAINTIFF ON ADMINISTRATIVE LEAVE**

48. On or about January 12, 2026, Thompson placed Plaintiff on paid administrative leave pending a "review/investigation."

49. Thompson's letter stated that the leave was not disciplinary and that Defendant would keep Plaintiff informed of the status of the review and advise her of next steps upon its conclusion.

50. The letter also barred Plaintiff from accessing Defendant's facilities and systems and from contacting Defendant's employees other than Human Resources and the Department Head.

**PLAINTIFF WAS QUESTIONED AND FALSELY ACCUSED OF GIVING THE OIG DOCUMENTS TO HUDGINS**

51. In or around the end of January 2026, Plaintiff was questioned about the documents and accused of turning them over to Hudgins.

52. Plaintiff truthfully denied doing so.

53. Plaintiff stated that she did not have information regarding Hudgins's Aide falsely claiming that Plaintiff gave the documents to her or that she was being disciplined.

54. In or around the end of February 2026, Plaintiff attended a second interview.

55. Plaintiff truthfully stated that she did not give Hudgins's Aide the documents and had made Hudgins's Aide return the documents.

56. Thompson credited the false account over Plaintiff's without conducting a proper investigation.

**DEFENDANT DID NOT INFORM PLAINTIFF OF THE DETAILS OF THE INVESTIGATION AND DID NOT ALLOW HER TO PROVIDE A RESPONSE**

57. During more than three (3) months of leave, Defendant never informed Plaintiff of the status of the review, the charges against her, or the evidence supporting them.

58. Defendant never gave Plaintiff an opportunity to respond.

**DEFENDANT IGNORED PLAINTIFF'S REQUEST TO EXERCISE HER CIVIL SERVICE RIGHTS**

59. Before her termination, Plaintiff provided notice that she wished to exercise her civil service rights.

60. Defendant ignored Plaintiff's notice.

**DEFENDANT TERMINATED PLAINTIFF**

61. On or about April 29, 2026, Thompson terminated Plaintiff, effective that same day.

62. The termination letter stated that, following an OIG investigation, Plaintiff "admitted to

providing untruthful statements."

63. Plaintiff never made untruthful statements and never made any such admission.

64. The termination letter classified Plaintiff's termination as a "disciplinary dismissal" and stated that, pursuant to Civil Service Regulation 15.044-2, Plaintiff would not be restored to her civil service title and forfeited her right to appeal to the Civil Service Commission.

65. Defendant gave Plaintiff no notice of the charges, no explanation of the evidence, and no opportunity to be heard, either before or after her termination.

66. Plaintiff never received the termination letter.

67. Plaintiff first learned of her termination on or about May 23, 2026, when she received a COBRA notice dated May 20, 2026, reporting an involuntary termination effective April 29, 2026.

**DEFENDANT DENIED PLAINTIFF'S REQUEST FOR AN APPEAL**

68. On or about May 26, 2026, Plaintiff emailed Candi Jones, Chief Human Resources Officer, requesting the basis for her termination and information regarding any appeal procedures.

69. On or about May 27, 2026, Jones sent Plaintiff the termination letter and stated that, because Plaintiff held an exempt position and was dismissed for disciplinary reasons, she had no Civil Service appeal rights and no right to restoration.

70. Jones referred Plaintiff to the PFD for the basis of the termination.

71. Defendant's personnel records now classify Plaintiff's separation as a "Disciplinary Dismissal."

72. As a result of her termination, Plaintiff lost her salary, benefits, civil service title, and accrued and vested pension benefits, including the deferred compensation portion of her pension.

73. Defendant retaliated against Plaintiff for reporting fraud and theft of public funds and for cooperating with the OIG investigation, and deprived her of her property and liberty interests without due process, in violation of the First and Fourteenth Amendments, as enforced through Section 1983 and the Pennsylvania Whistleblower Law.

74. Defendant's acts and/or omissions were willful or with reckless disregard to Plaintiff's federal statutory rights.

**COUNT I – PROCEDURAL DUE PROCESS (PROPERTY INTEREST)**
**FOURTEENTH AMENDMENT, 42 U.S.C. § 1983**

75. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

76. Plaintiff had a protected property interest in her civil service status, including her right to be restored to her civil service title, and in her accrued pension benefits.

77. Defendant, acting through Thompson under color of state law, deprived Plaintiff of those property interests.

78. Defendant did not provide Plaintiff with notice of the charges, an explanation of the evidence, or an opportunity to respond prior to the deprivation.

79. Defendant did not provide Plaintiff with any post-deprivation hearing.

80. Thompson made the decision to terminate Plaintiff as Defendant's final policymaker.

81. Defendant also maintains a policy and/or custom, as stated by Jones, of stripping exempt employees dismissed for disciplinary reasons of their civil service restoration rights without a hearing.

82. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, *infra*.

**COUNT II – PROCEDURAL DUE PROCESS (LIBERTY INTEREST)**
**FOURTEENTH AMENDMENT, 42 U.S.C. § 1983**

83. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
84. Plaintiff In connection with Plaintiff's termination, Defendant falsely charged Plaintiff with dishonesty.
85. The charge is stigmatizing and damages Plaintiff's reputation and her ability to obtain future employment.
86. Defendant published the charge by recording it in Plaintiff's personnel file, by circulating it among Defendant's Human Resources personnel, and, upon information and belief, by communicating it to others within and outside the PFD.
87. Plaintiff disputes the truth of the charge.
88. Defendant did not afford Plaintiff a name-clearing hearing.
89. Thompson made the decision to terminate Plaintiff and to charge her with dishonesty as Defendant's final policymaker.
90. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RETALIATION**
**FIRST AMENDMENT, 42 U.S.C. § 1983**

91. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.
92. Plaintiff engaged in activity protected by the First Amendment as alleged herein, including reporting fraud and theft of public funds to the OIG, providing information to the OIG during

its investigation, and associating with Hudgins.

93. Plaintiff's reports and cooperation addressed matters of public concern, namely the misuse of public funds and corruption within a City department.

94. Plaintiff's participation in the OIG investigation was not among her ordinary job duties.

95. Thompson knew of Plaintiff's protected activity.

96. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, placing her on administrative leave, terminating her, and stripping her of her civil service status and pension.

97. There exists a causal connection between Plaintiff's protected activity and the adverse employment actions, as shown by Thompson's repeated demands for loyalty, his hostility toward Plaintiff's association with Hudgins, the timing of the adverse actions, and the false basis for her termination.

98. Thompson made the retaliatory decisions as Defendant's final policymaker.

99. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IV – RETALIATION**
**PENNSYLVANIA WHISTLEBLOWER LAW, 43 P.S. § 1421 et seq.**

100. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

101. Plaintiff made good faith reports of wrongdoing and waste, including payroll fraud and theft of public funds, to appropriate authorities, including the OIG and Thompson, within the meaning of 43 P.S. § 1423(a).

102. Plaintiff also participated in an investigation by an appropriate authority, the OIG, within the meaning of 43 P.S. § 1423(b).

103. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, placing her on administrative leave, terminating her, and stripping her of her civil service status and pension.

104. There exists a causal connection between Plaintiff's reports and participation in the OIG investigation and the adverse employment actions.

105. Plaintiff files the instant Complaint within one hundred eighty (180) days of Defendant's violation, as required by 43 P.S. § 1424(a).

106. Plaintiff is entitled to the relief provided by 43 P.S. § 1425, including reinstatement, back wages, restoration of benefits and seniority rights, actual damages, and reasonable attorneys' fees and costs.

107. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Kelly Collins, requests that the Court grant her the following relief against Defendant:

(a) Reinstatement to her position, or restoration to her civil service title, with full seniority, benefits, and pension rights, or front pay in lieu thereof;

(b) Damages for past and future monetary losses as a result of Defendant's unlawful conduct, including back pay, lost benefits, and lost pension benefits;

(c) Compensatory damages;

(d) Emotional pain and suffering;

(e) Damages for injury to Plaintiff's reputation;

(f) Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 43 P.S. § 1425;

(g) Recoverable costs;

(h) Pre and post judgment interest;

(i) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for her adverse actions, disciplines, and termination; and

(k) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW LLC**

Date: October 22, 2026

By: */s/ David M. Koller*

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215)-545-8917
F: (215)-575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*